**CHRISTENSON LAW FIRM, LLP**
Vonn R. Christenson (SBN 244873)
472 West Putnam Avenue
Porterville, California 93257
Telephone: (559) 784-4934
Facsimile: (559) 784-3431

**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Adam S. Hamburg (SBN 247127)
Christopher M. Lapidus (SBN 316005)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone: (949) 381-5900
Facsimile: (949) 271-4040
Email: bpaino@mcglinchey.com
ahamburg@mcglinchey.com
clapidus@mcglinchey.com

Attorneys for *Plaintiff* **HELLENIC PETROLEUM LLC**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELLENIC PETROLEUM LLC, <br><br> Plaintiff, <br><br> v. <br><br> ELBOW RIVER MARKETING, LTD., <br><br> Defendants. | Case No.: 1:20-CV-00374-NONE-BAM <br><br> [Formerly Stanislaus County Superior Court Case No. CV-19-000967] <br><br> **PLAINTIFF HELLENIC PETROLEUM LLC'S SECOND AMENDED COMPLAINT FOR:** <br><br> 1. **TRADE LIBEL;** <br> 2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;** <br> 3. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;** <br> 4. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;** <br> 5. **VIOLATION OF THE CARTWRIGHT ACT, CAL. BUS. & PROF. CODE §§ 16270, *ET SEQ*.; AND** <br> 6. **UNFAIR BUSINESS COMPETITION** <br><br> Action Filed: February 19, 2019 <br> Trial Date: NA |

Plaintiff, Hellenic Petroleum LLC ("Hellenic" and/or "Plaintiff") complains and alleges as follows:

**PARTIES**

1. Hellenic, is and at all times herein mentioned was a Florida limited liability company that is qualified and authorized to do business in the state of California. Hellenic conducts business in California from its offices located in Modesto, California.

2. Hellenic is informed and believes and thereon alleges that Defendant Elbow River Marketing, Ltd. ("ERM") is, and at all times herein alleged was, a Canadian business entity, with its place of business located in 335 8th Avenue SW, Suite #810, Calgary, AB, Canada T2P 1C9. Hellenic is informed and believes and thereon alleges that at all times herein mentioned, ERM was and is qualified and authorized to engage in business in the State of California.

3. Hellenic is informed and believes and thereon alleges that Defendant ERM operates as a wholesaler, transporter, supplier, and marketer of liquid petroleum gases (or "LPGs"), including propane, butane, and condensate, crude oil, heavy fuel oil, and a refined fuel and bio-fuel products. ERM markets and transports LPGs on a wholesale basis across North America, including California.

4. Hellenic is ignorant of the true names and capacities of Defendants DOES 1 through 10 inclusive, and therefore has sued them by their foregoing fictitious names. When said true names and capacities are discovered, Hellenic will seek leave to amend this Complaint to insert their true names and capacities in lieu of said fictitious names.

5. Hellenic is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants herein was the agent, servant and employee of each of the remaining Defendants, and said Defendants were at all times acting within the purposes and scope of such agency and employment.

6. Hellenic is informed and believes, and on the basis of such information and belief alleges that DOE Defendants 1 through 10, inclusive, are somehow responsible for the acts and occurrences alleged herein and are responsible for the Hellenic's damages as alleged in this Complaint.

**JURISDICTION AND VENUE**

7. This dispute concerns the sale and distribution of propane from ERM to Hellenic in California. Specifically, Hellenic ordered propane from ERM, which was shipped to, and received by Hellenic at is facilities located in Modesto, California, which is located in this judicial district. Likewise, the damages incurred by Hellenic, as alleged herein, were incurred in this judicial district. As such, this Court is the necessary and proper venue for this action because the subject claims arose in, and occurred within this judicial district.

**GENERAL ALLEGATIONS**

8. Propane is a natural gas liquid that is used to produce plastics and as a source of energy for residential and commercial purposes. Residential and commercial demand for propane is seasonal, with the peak season spanning the months of November to March each year. Prior to this peak season, propane prices are generally at their lowest point in the market.

9. Non-party Sacramento Energy Resources, LLC ("Sacramento Energy") specializes in wholesale propane and butane supply, storage, and distribution nationally and internationally. Sacramento Energy sells propane to customers in forty-two states, including California.

10. Hellenic, is and at all times herein mentioned, was engaged in the sale and distribution of propane for consumer and commercial use in the State of California. Specifically, in or about 2018, Hellenic entered into the propane marketplace in California. Barriers of entry into this marketplace are high due to the costs of customer acquisition and establishment of a distribution infrastructure. After entering into the marketplace, Hellenic purchased propane from various suppliers, including Elbow River and Sacramento Energy, both of which were more established participants in the California marketplace for propane.

11. In or about November 2018, Hellenic submitted a credit application to ERM to purchase propane from ERM on a line of credit. It was expressly agreed between Hellenic and ERM that the limit on Hellenic's credit account would not exceed one million dollars for any shipment and/or outstanding balance on the existing credit line. The expressed intent of the credit cap limit was to ensure that Hellenic would not receive quantities of propane in excess of what it could store and sell given its limited storage facilities. Specifically, Hellenic's Modesto, California rail facilities (the

"Rail Facilities") only had the capacity to receive 9 railcars of propane at any given time, and the rail cars needed to be removed from the tracks within a specified time to comply with various stated and/or federal rules and regulations. Further, Hellenic's storage facility was equipped to only store 30,000-60,000 gallons of propane at any given time.

12. At or about the same time Hellenic obtained the $1 million credit line from Elbow River, Hellenic also obtained a $200,000 credit line from Sacramento Energy for the purchase of propane.

13. Following the execution of the credit agreements with ERM and Sacramento Energy, ERM and Sacramento Energy began shipping propane to Hellenic via railcars, which were received by Hellenic at its Rail Facilities.

14. Notwithstanding the above stated credit limits, Sacramento Energy and ERM conspired to overwhelm Hellenic's resources, including its cash reserves and storage facilities, by shipping Hellenic propane that Hellenic did not order and that exceeded Hellenic's respective credit lines with Sacramento Energy and ERM. The over-shipments were sent to the Rail Facilities.

15. Specifically, in or about 2018 and 2019, ERM shipped Hellenic $1.5 million in propane even though its credit line with Hellenic was only $1 million. Upon Hellenic's receipt of the over-shipment from ERM, Hellenic attempted to refuse the shipment, but ERM was unwilling to accept a return of the over-shipment. Due to various laws and/or regulations that limited the amount of time railcars could remain on the tracks at the Rail Facilities, Hellenic was forced to remove the over-shipment from the railcars through which it was delivered and ultimately liquidate the propane due to its limited propane storage capacity.

16. ERM's intent in sending the over-shipment of propane to Hellenic was twofold as it: (a) purported to obligate Hellenic to pay for the excess shipment at a time when the pricing for the product was at a seasonable high; and (b) overwhelmed Hellenic's credit and storage facilities, thereby hamstringing its sales operations.

17. Eventually, ERM discontinued its over-shipment of propane to Hellenic. Not to be deterred, it then coordinated with Sacramento Energy to further overwhelm Hellenic's credit and storage facilities by diverting product to Sacramento Energy. In turn, Sacramento Energy shipped

additional surplus propane that originated with ERM to Hellenic at the Rail Facilities. All told, Sacramento Energy shipped Hellenic over $1 million in propane, notwithstanding the $200,000 limit on its credit line with Hellenic. Upon Hellenic's receipt of the over-shipment from Sacramento Energy, Hellenic attempted to refuse the shipment, but Sacramento Energy was unwilling to accept a return of the over-shipment. Due to various laws and regulations that limited the amount of time railcars could remain on the tracks at the Rail Facilities, Hellenic was forced to remove the over-shipment from the railcars and ultimately liquidate the propane due to its limited propane storage capacity.

18. Hellenic is informed and believes and thereon alleges that ERM and Sacramento Energy engaged in the aforementioned conduct with the intent of overloading Hellenic with propane so as to create a trade restraint and impair Hellenic from engaging in the sale and distribution of propane in California. This adversely impacted Hellenic's ability to compete in the propane marketplace.

19. Additionally, as part of this unlawful conspiracy to restrain trade and impair Hellenic's ability to engage in business in California, ERM began defaming Hellenic in the industry and to its vendors and customers so as to cause harm to Hellenic's business and strategic relationships with its customers, vendors, and suppliers.

## FIRST CAUSE OF ACTION

### (Trade Libel)

### (Against all Defendants and DOES 1 through 10)

20. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

21. Hellenic is informed and believes and thereon alleges that ERM has made statements in the marketplace to disparage Plaintiff, including with respect to Plaintiff's creditworthiness, and its purported business and payment practices.

22. Specifically, Hellenic is informed and believes, and thereon alleges that ERM has made statements in the marketplace, including in particular to other propane suppliers of Hellenic, about

Plaintiff's alleged untrustworthiness, credit unworthiness and refusal to honor a contract to pay for propane, even though (as explained more fully herein) Plaintiff did not agree to purchase said propane.

23. Notably, Hellenic is informed and believes, and thereon alleges that in or about March 2019, ERM made such disparaging statements via telephone and/or other communications to two of Hellenic's suppliers of propane, Apex Propane and Kiva Energy.

24. As a result of ERM's disparaging statements to Apex Propane and Kiva Energy, Apex Propane and Kiva Energy advised Hellenic that they would no longer sell or supply Hellenic with any propane, despite the fact that both entities had existing contractual relationships with Hellenic with respect to the sale and purchase of propane.

25. Furthermore, not only has ERM been making disparaging statements to vendors, customers and other suppliers of Hellenic, but ERM has been colluding with Sacramento Energy to overload Plaintiff with unordered product, and to work together to jointly disparage Plaintiff in the marketplace.

26. Indeed, Plaintiff ended its relationship with ERM as soon as ERM's wrongful conduct became apparent, whereupon ERM then started wrongfully and deceptively shipping its product to Plaintiff instead through Sacramento Energy. Plaintiff soon ended its relationship with Sacramento Energy as soon as the same wrongful conduct became apparent.

27. ERM's statements regarding Plaintiff's alleged untrustworthiness, credit unworthiness and refusal to honor a contract to pay for propane are untrue.

28. ERM knew that the statements were untrue and/or ERM acted with reckless disregard of the truth or falsity of the statements.

29. ERM knew or should have recognized that someone else might act in reliance on its statements about Plaintiff, causing Plaintiff financial loss.

30. Upon information and belief, Plaintiff suffered direct financial harm because someone else acted in reliance on ERM's statements about Plaintiff.

31. Specifically, as a result of ERM's disparaging statements about Plaintiff, Plaintiff was deprived of doing business with Apex Propane and Kiva Energy, and consequently was unable to

procure a sufficient supply of propane in order to fulfill the demand of its customers, and as a result, Hellenic lost all future opportunities to sell propane.

32. ERM's conduct was a substantial factor in causing Plaintiff's harm.

33. The aforementioned acts of ERM were willful, oppressive, fraudulent and malicious, and were committed, authorized, and/or ratified by ERM's officers, directors, and/or managing agents, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish ERM and deter ERM from engaging in similar future conduct.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Relations)

### (Against all Defendants and DOES 1 through 10)

34. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

35. Plaintiff has economic relationships with existing and prospective customers who have purchased product from Plaintiff from 2018 through early 2019. These relationships have the probability of future economic benefit to Plaintiff in the form of further purchases, sales and services.

36. ERM knew of Plaintiff's relationships with its existing and prospective customers.

37. ERM's independently wrongful conduct alleged herein was intended to and has actually disrupted Plaintiff's economic relationships. In particular, as a result of the above-alleged conduct, ERM has interrupted Plaintiff's ability to procure propane from any suppliers, which therefore, has resulted in Plaintiff's inability to reliably supply its customers with product and have interfered with the purchases that those customers otherwise would have made with Plaintiff.

38. ERM knew that that their unlawful and unfair business methods would disrupt Plaintiff's business and siphon both customers and total purchases from Plaintiff.

39. As a proximate result of ERM's conduct, Plaintiff's economic relationships with its customers were actually disrupted. Specifically, as a result of ERM's disparaging statements to Plaintiff's suppliers, Plaintiff was unable to obtain propane to sell to its existing and prospective customers, which both reduced purchases from Plaintiff's customers and caused Plaintiff's customers not make purchases from Plaintiff at all, thereby harming Plaintiff.

40. ERM's officers, directors and/or managing agents have committed and continue to commit such intentional, willful and malicious non-legitimate business acts with the intent of disrupting Plaintiff's business relations and reaping for themselves the future economic benefit that would otherwise flow to Plaintiff. Such actions have caused and will continue to cause damage to Plaintiff in the form of lost profits, lost sales, lost opportunity, lost goodwill, monetary damage, and damage to reputation. Plaintiff therefore seeks from ERM compensatory damages, punitive damages, statutory or enhanced damages, and any other relief this Court deems appropriate in order to make Plaintiff whole.

## THIRD CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Relations)

### (Against all Defendants and DOES 1 through 10)

41. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

42. Plaintiff had and currently has economic relationships with existing and prospective customers, who have purchased product from Plaintiff from 2018 through early 2019. These relationships have the probability of future economic benefit to Plaintiff in the form of further purchases, sales and services.

43. ERM knew or should have known of Plaintiff's relationships with its existing and prospective customers.

44. ERM knew or should have known that that their unlawful and unfair business methods would disrupt Plaintiff's business and siphon both customers and total purchases from Plaintiff if ERM failed to act with reasonable care.

45. ERM failed to act with reasonable care when it decided to interfere with Plaintiff's distribution to customers, and to seek to create financial pressures on Plaintiff through oversupply of propane.

46. By interfering with Plaintiff's distribution to customers, and creating financial pressures on Plaintiff through oversupply of propane, ERM were engaging in wrongful conduct that

8
**SECOND AMENDED COMPLAINT**
1613594.1

was in violation of their prior discussions with Plaintiff and which demonstrate that ERM were engaged in misrepresentation and/or fraud against Plaintiff.

47. As a proximate result of ERM's conduct, Plaintiff's economic relationships with its customers were actually disrupted. Specifically, as a result of ERM's disparaging statements to Plaintiff's suppliers, Plaintiff was unable to obtain propane to sell to its existing and prospective customers, which both reduced purchases from Plaintiff's customers and caused Plaintiff's customers not make purchases from Plaintiff at all, thereby harming Plaintiff.

48. ERM's wrongful conduct was a substantial factor in causing Plaintiff's harm, and ERM should be held accountable for such interference.

49. The aforementioned acts of ERM were willful, oppressive, fraudulent and malicious, and were authorized, committed and/or ratified by ERM's officers, directors and/or managing agents, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish ERM and deter ERM from engaging in similar future conduct.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

### (Against all Defendants and DOES 1 through 10)

50. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

51. Plaintiff had a contractual relationship with various suppliers and vendors in connection with the trucking and distribution of propane to Plaintiff's customers, including but not limited to Apex Propane and Kiva Energy.

52. ERM knew of Plaintiff's contractual relationship with these suppliers.

53. ERM's conduct made performance more expensive or difficult for Plaintiff. Specifically, as a result of ERM's conduct, certain suppliers of Plaintiff, including but not limited to Apex Propane and Kiva Energy, both of whom, stopped engaging in business with Plaintiff, and refused to supply and/or sell propane to Hellenic, despite the fact that both companies had a contractual obligation to do so. Additionally, ERM's wrongful conduct also interfered with Hellenic's contractual

relationships with its customers, as Hellenic was unable to meet is customers' demands for propane, since none of its suppliers would sell or supply propone to Hellenic.

54. ERM intended to make performance of the contract more expensive or difficult for Plaintiff, and/or ERM knew that disruption of performance was certain or substantially certain to occur.

55. As a proximate result of ERM's conduct, Plaintiff's contractual relationships with its suppliers and customers was actually disrupted to Plaintiff's harm and detriment.

56. ERM's wrongful conduct was a substantial factor in causing Plaintiff's harm, and ERM should be held accountable for such interference.

57. The aforementioned acts of ERM were willful, oppressive, fraudulent and malicious, and were authorized, committed and/or ratified by ERM's officers, directors and/or managing agents, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish ERM and deter ERM from engaging in similar future conduct.

## FIFTH CAUSE OF ACTION

### (Violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16270, *et seq*.)

### (Against all Defendants and DOES 1 through 10)

58. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

59. The Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq*. (the "Cartwright Act") generally prohibits the restraint of trade. Pursuant to the Cartwright Act, an unlawful trust is defined as, among other things, "a combination of capital, skill or acts by two or more persons [for the purposes of] prevent[ing] competition in manufacturing, making, transportation, sale or purchase of merchandise, produce, or any commodity." Cal. Bus. & Prof. Code § 16720(c). Any trust meeting the definition prescribed under section 16720(c) is unlawful. *See* Cal. Bus. & Prof. Code § 16726.

60. Under the Cartwright Act, any person injured in his or her business or property by reason of anything forbidden or declared unlawful under the Act has a private right of action through which they can recover treble damages and attorneys' fees. *See* Cal. Bus. & Prof. Code § 16750(a).

1613594.1

61. The following elements are generally required to state a claim under the Cartwright Act: (a) the formation and operation of a conspiracy; (b) the illegal acts done pursuant thereto; (c) a purpose to restrain trade; and (d) damage caused by such acts.

62. Plaintiff is a relatively new competitor in the California propane supplier marketplace.

63. Upon entering the California propane supplier marketplace, Plaintiff quickly started to gain market share due to effective marketing and attractive pricing.

64. Upon information and belief, ERM felt competitively threatened by Plaintiff and desired to remove Plaintiff as a competitor in the California propane supplier marketplace.

65. Propane is a commodity for purposes of the Cartwright Act.

66. ERM and Sacramento Energy conspired to restrain trade by coordinating with one another to drive Hellenic out of the California marketplace for propane sales. The conspiracy consisted of the two entities collaborating to overwhelm Hellenic's credit and storage facilities by: (a) shipping Hellenic propane at peak market prices even though Hellenic did not order the product; (b) refusing a return of the over-shipments in product, thereby forcing Hellenic to accept the shipment and liquidate the product at a loss, or at cost with little, or in some cases, no profit; and (c) disparaging Hellenic's reputation with critical vendors.

67. ERM and Sacramento Energy's conspiracy is evidenced in part by the fact that both ERM and Sacramento Energy over-shipped propane to Hellenic in violation of their respective credit limits during the same limited timeframe, and Sacramento Energy received at least some of the propane it over-shipped to Hellenic from ERM.

68. As a result of ERM's anticompetitive conduct, Hellenic has effectively been forced out of the propane marketplace in California. This has resulted in significant lost profits to Hellenic.

69. The California propane marketplace is defined as the market for wholesale propane purchased within the confines of the State of California for resale, distribution and/or consumer use in such state.

70. ERM has substantial market power in the California propane marketplace, as it markets and transports propane on a wholesale basis across the United States, including California. On

11
**SECOND AMENDED COMPLAINT**
1613594.1

information and belief, each year ERM sells tens of millions of liters of fuel product to distributors in the United States, including distributors located in California.

71. Moreover, ERM's anticompetitive conduct has deterred the development of competing distributors of propane in the California marketplace, thereby damaging consumers by depriving them of a more competitive marketplace for the purchase of propane.

72. The purpose of effect of ERM's conduct was to restrain competition.

73. The anticompetitive effect of the restraints outweighed any beneficial effect on competition.

74. Plaintiff was harmed as a proximate result of ERM's conduct, and Plaintiff's ability to compete in the marketplace was seriously disrupted.

75. ERM's wrongful conduct was a substantial factor in causing Plaintiff's harm, and ERM should be held accountable for such actions.

## SIXTH CAUSE OF ACTION
### (Unfair Competition)
### (Against all Defendants and DOES 1 through 10)

76. Hellenic refers to and incorporates herein by reference each and every paragraph set forth above as though fully set forth herein.

77. California Business & Professions Code §§ 17200, et seq., defines unfair competition as any unlawful, unfair, or fraudulent business act of practice by acting, and conspiring to act, to retrain trade in the propane market in California in violation of the Cartwright Act.

78. As alleged hereinabove, ERM has engaged in acts towards Plaintiff that constitute unlawful and unfair business practices in violation of California Business and Professions Code section 17200 and the Cartwright Act.

79. The harm to Plaintiff and to members of the general public outweighs any utility of ERM's business practices.

80. Upon information and belief, ERM took the aforementioned actions willfully and maliciously, with the intent to injure Plaintiff, to gain an unfair competitive advantage, and to advance

their own gain at the expense of Plaintiff's rights, reputation and business interest, and Plaintiff is therefore entitled to the relief sought.

81. Upon proof, Plaintiff is entitled to recover its costs, including attorney's fees, under California Code of Civil Procedure section 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Hellenic prays for judgment against ERM, as follows:

### ON THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION

1. For damages in the amount to be determined according to proof at trial;
2. For interest on said damages;
3. For punitive damages;
4. For costs of suit;

### ON THE FIFTH CAUSE OF ACTION

5. For general damages, trebled, in an amount according to proof;
6. In the alternative, for restitution and damages for unjust enrichment;
7. For special damages, including but not limited to, attorney's fees and other expenditures incurred in the prosecution of this case;

### ON THE SIXTH CAUSE OF ACTION

8. For injunctive relief and declaratory relief pursuant to Business and Professions;
9. For restitution in an amount to be determined at trial;
10. For reasonable attorney's fees as determined by the Court at the time of trial;

///
///
///
///
///
///
///
///

13
**SECOND AMENDED COMPLAINT**
1613594.1

## ON ALL CAUSES OF ACTION

11. For costs of suit herein; and

12. For such other and further relief as the Court may deem just and proper.

DATED: June 26, 2020

**McGLINCHEY STAFFORD**

By: */s/ Adam S. Hamburg*
    ADAM S. HAMBURG
    BRIAN A. PAINO
    CHRISTOPHER M. LAPIDUS
Attorneys for *Plaintiff* HELLENIC PETROLEUM LLC

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
                               )   **ss.**
**COUNTY OF ORANGE** )

I, Theresa Fontes, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 18201 Von Karman Ave., Suite 350, Irvine, California 92612.

On June 26, 2020, I served the document(s) described as **PLAINTIFF HELLENIC PETROLEUM LLC'S SECOND AMENDED COMPLAINT** as follows:

☐    **BY MAIL**: As follows:

      ☐    **FEDERAL –** I deposited such envelope in the U.S. mail at Irvine, California, with postage thereon fully prepaid,

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's Electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF users set forth in the service list obtained from this Court. Pursuant to Electronic Filing Court Order, I hereby certify that the above documents(s) was uploaded to the website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒    **FEDERAL:** I declare that I employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on June 26, 2020, at Irvine, California.

                                                                           */s/ Theresa Fontes*
                                                                           Theresa Fontes

1557581.1

**SERVICE LIST**
**United States District Court,**
**Hellenic Petroleum, LLC v. Elbow River Marketing, LTD.**
**File # 107710.0002**

| | |
|---|---|
| Nicole S. Healy, Esq.<br>ROPERS, MAJESKI, KOHN & BENTLEY<br>1001 Marshall Street, Suite 500<br>Redwood City, CA 94063 | Attorneys for ELBOW RIVER MARKETING LTD.<br><br>650-364-8200<br>650-780-1701 FAX<br>nicole.healy@rmkb.com |

1557581.1